JUDGE SWEET

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



13 CV 3060

| | |
|---|---|
| DEWITT STERN GROUP, INC., | Civil Action No. |
| Plaintiff, | |
| v. | |
| RICHARD EISENBERG, | COMPLAINT |
| Defendant. | |

RECEIVED MAY -6 2013 U.S.D.C. S.D.N.Y. CASHIERS

Dewitt Stern Group, Inc. (together with its related entities "Dewitt" or the "Company"), by its attorneys Goldberg Segalla LLP, allege as follows:

### Nature of the Action

1. Dewitt brings this action to seek redress for violations by its former Senior Vice President, Richard Eisenberg, of the confidentiality, company property and non-solicitation provisions of his employment agreement (the "Employment Agreement") with the Company, for declaratory relief with regard to his obligations pursuant thereto, and for injunctive relief to prevent Eisenberg from further violating the terms thereof. Dewitt also brings this action to seek redress for and prevent Defendant from further violating the common law duties he owes Dewitt by virtue of his employment with the Company, and to recover damages for Defendant's past breaches of his contractual and common law duties owed to DeWitt by virtue of his employment with the Company.

2. Up until today, May 6, 2013, Mr. Eisenberg was employed by Dewitt as its Senior Vice President. To memorialize and confirm the understandings and agreements entered into as between DeWitt and Eisenberg with respect to his employment for the Company, Eisenberg

162640.1

executed an October 9, 2012 employment agreement ("Employment Agreement") – the third such agreement during his tenure with Dewitt (the Employment Agreement supersedes the prior two agreements) – in which he agreed, among other things, (a) not to compete with the Company during the term of his employment, (b) not to improperly disclose the Company's confidential information or trade secrets, (c) not to forward Company property (including e-mails) to his personal e-mail account, and (d) not to use the Company's confidential information or trade secrets to solicit, during the term of his employment and for two (2) years following the termination of his employment, any clients or Prospect of the Company.

3. On April 30, 2013, Mr. Eisenberg unexpectedly contacted Dewitt and requested a meeting be held on May 1, 2013 at Dewitt's corporate headquarters in New York. However, approximately 90 minutes before the meeting was scheduled to take place, Mr. Eisenberg cancelled the meeting, stating that his "travel plans got all screwed up." He subsequently requested that he be given the opportunity to speak with the Company's President and Chief Operating Officer (Charles Johnson) on May 6, 2013, when Mr. Johnson was scheduled to be back in the New York office after returning from a business trip that would take him out of state.

4. On May 6, 2013, Mr. Eisenberg gave notice of his resignation to Mr. Johnson over the telephone and stated his intention to immediately join Arthur J. Gallagher Risk Management Services Inc. ("Gallagher"), a direct competitor of Dewitt. According to Mr. Eisenberg, he had to leave because of "the money." Specifically, he stated "I got to leave – it's money – there's no way to live on the type of money I get from you." Mr. Eisenberg then stated Gallagher was going to pay him a draw of $300,000 per year.

5. When advised during this phone call that he had a duty and obligation not to make use of the Company's confidential information or trade secrets to solicit any clients or prospects

of the Company, he disavowed any obligation to honor the commitments contained in his Employment Agreement. Specifically, when asked whether he would abide by the Employment Agreement's non-solicitation provision, he responded "no."

6. Dewitt now brings this action for declaratory and injunctive relief, as well as for compensatory damages, for Defendant's wrongful conduct, as described more fully below.

## Parties

7. Dewitt is a corporation organized under the laws of the state of New York, with its principal place of business located at 420 Lexington Ave., S-2700, New York, New York 10170. While it has offices and conducts business in Illinois and California, New York is the primary base of its business operations, and where most of its senior management is located.

8. Upon information and belief, Mr. Eisenberg is an individual who resides at 2660 S. Ocean Blvd., Apt. 403W, Palm Beach, Florida 34480.

## Jurisdiction and Venue

9. Pursuant to U.S.C. 28 § 1332, this Court has jurisdiction over this action because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

10. This Court has personal jurisdiction over the Defendant because the facts underlying the matters in controversy substantially occurred within the state of New York, because the claims arise from Defendant's transaction of business in New York, and because Defendant expressly consented in the Employment Agreement to personal jurisdiction in a court of competent jurisdiction sitting in the City of New York over any dispute arising out of, or in any manner relating to, the Employment Agreement or his employment with the Company.

11. Pursuant to 29 U.S.C. § 1391, venue properly lies in this Court because Dewitt's headquarters and principal place of business are in this judicial district and a substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## Background

12. Dewitt is a privately held insurance brokerage and risk management firm, specializing (in part) in insurance for the entertainment industry.

13. During his employment with Dewitt, Mr. Eisenberg's primary duty as Senior Vice President was to sell film insurance products.

14. The Employment Agreement was drafted in New York.

15. Defendant reported to Dewitt's President in New York and was supervised from New York.

16. Dewitt's administrative functions, such as payroll and human resources, operate out of New York.

17. Defendant attended Dewitt-related meetings in New York three to four times per year.

18. Defendant received his paychecks from New York.

19. Upon information and belief, Defendant's largest client was based in New York, and the person from said client who Defendant dealt with on a regular basis was located in New York.

20. In his capacity as a senior employee of Dewitt, Defendant had access to confidential and/or proprietary information of Dewitt, as those terms are defined in his Employment Agreement.

21.     Upon information and belief, beginning no later than March 18, 2013, Defendant began engaging in conduct in violation of his Employment Agreement and his common law duties and obligations to DeWitt, including corresponding via his Company e-mail address with Brian Kingman, Managing Director at Gallagher, a direct competitor of Dewitt.

22.     Defendant's e-mail correspondence with Mr. Kingman contained confidential information and/or trade secrets as they pertain to a client opportunity for Dewitt. In particular, the email attached information regarding a business opportunity to place insurance on behalf of a client with regard to a forthcoming film. Evidencing specific awareness of this, and the fact that he would have no common law or contractual right to provide this opportunity to Mr. Kingman, in his e-mail to Mr. Kingman on April 17, 2013, Defendant stated "Can't do anything until I give notice." Upon information and belief, based upon the content of this communication, and his subsequent conduct, including giving notice and stating his intent to accept employment with Mr. Kingman's company, this email was sent for the purpose of advising a competitor of a DeWitt business opportunity Defendant intended to solicit for a DeWitt competitor.

23.     Following this e-mail correspondence, on April 30, 2013, Defendant continued to act in breach of his Employment Agreement and further evidence his intent to divert DeWitt business opportunities in violation of his Employment Agreement and his common law duties by forwarding e-mails containing confidential information and/or trade secrets to his personal e-mail account.

24.     Specifically, on April 30, 2013, Defendant forwarded from his Dewitt e-mail account to his personal e-mail account (1) an e-mail describing coverage issues for a current Dewitt client, and (2) interactive policy renewal applications for a different current Dewitt client.

25. On May 2, 2013, Defendant forwarded from his Dewitt e-mail account to his personal e-mail account an e-mail to which was attached a current Dewitt client's movie script, budget, and other confidential information necessary to solicit preliminary insurance quotes.

26. Subsequently, on May 4, 2013, Defendant forwarded from his Dewitt e-mail account to his personal e-mail account three e-mails to which were attached a current movie client's cast log and medical forms, containing confidential coverage and other information. All of these actions took place while Defendant was still employed with Dewitt and in contemplation of his resignation to join a competitor.

27. On May 6, 2013, Defendant fully revealed his intent to leave DeWitt and to immediately begin acting in competition with DeWitt by making use of confidential information and/or trade secrets to solicit current DeWitt clients and DeWitt prospects by giving notice to DeWitt's President of his resignation and advising that he does not believe his Employment Agreement prevents or precludes him from immediately competing directly with DeWitt for DeWitt clients and business prospects that have come to his attention in his capacity as a DeWitt employee.

28. Upon information and belief, Defendant has been acting at least since March 18, 2013 in violation of his express contractual and common law duties and obligations to the Company, while using and planning to make further use of Company confidential information and/or trade secrets, and business opportunities for his own personal benefit, and to benefit a competitor.

29. Upon information and belief, Defendant has either diverted or taken steps to divert business and business opportunities to a competitor which have cost or will cost the Company in excess of $75,000 in lost commissions.

## Mr. Eisenberg's Employment Agreement

30. Paragraph 1(b) of the Employment Agreement states that "[d]uring the term of employment, Employee shall not compete with Company...without the prior written consent of a senior officer of Company."

31. Paragraph 5(a) of the Employment Agreement defines Confidential Information as including:

> all information (whether or not specifically labeled or identified as confidential, and whether oral, written, or in any electronic medium) relating to Company's trade secrets, knowledge, data, financial information, business methods and techniques, technology, processes, innovations, concepts, names and lists of accounts, employees, customers, clients, vendors, expiration information, name of key account contacts, account characteristics, application information, and all other information relating to Company that is unique, proprietary, or not in the public domain.

32. In its language defining what constitutes a "Trade Secret," Paragraph 5(a) of the Employment Agreement states that "all information that Company reasonably informs Employee (whether orally or in writing) from time to time is a trade secret, as well as any other Confidential Information reasonably the subject of trade secret protection. Such information is considered secret and is disclosed to Employee in confidence."

33. Paragraph 5(a) of the Employee Agreement states that:

> by signing this Agreement, Employee acknowledges and agrees that the restrictive covenants contained in this Agreement are reasonably necessary to protect Company's legitimate business interests, and that during and after the term of this Agreement Employee will not use or disclose, directly or indirectly, and will keep strictly secret and confidential all Confidential Information and Trade Secrets except as required in the course of Employee's employment by Company.

34. Paragraph 5(b) of the Employee Agreement states that:

> Employee shall not retain copies, in any format, of Company Property. Employee agrees and understands that Company Property shall not, at any

> time, be copied or transferred to any memory storage device, online account or personal email address that is maintained by or for Employee. Such copying or transferring includes, for example, forwarding emails or an attachment to a personal email account, and exceeds the scope of Employee's authority relating to the use of Company's computer network and electronic communications.

35. Paragraph 5(b) of the Employee Agreement defines Company Property as including, but not being limited to:

> all files, papers, memoranda, letters, emails and attachments, instant messages, handbooks and manuals, facsimile or other communications that were written, authorized, signed, received or transmitted during Employee's employment including any computer hardware or software, telephones, PDA's or Blackberrys or other communications equipment, keys, identification or security cards in Employee's possession.

36. Paragraph 5(c) of the Employee Agreement states that:

> [i]n consideration of Employee's continued employment with Company, Employee agrees that during the term of employment, and for the two (2) year period immediately following termination of employment for any reason, Employee will not use Company's Confidential Information or Trade Secrets to solicit, accept, divert, or take away, in whole or in part, directly or indirectly, any clients or "Prospect" (as hereinafter defined) of Company who were solicited or serviced by Employee or by anyone directly or indirectly under Employee's supervision, or with whom Employee had any business relationship, within the two (2) year period immediately prior to Employee's termination of employment. For purposes of this Agreement, "Prospect" shall be defined as a potential customer known and contacted by Employee or Company prior to the date of termination of employment.

37. In the event of a dispute arising between the Company and the Defendant arising out of his employment with the Company, Paragraph 11 of the Employee Agreement provides that "[a]ny dispute arising out of, or in any manner relating to, this Agreement or Employee's employment with Company shall be resolved in a court of competent jurisdiction sitting in the City of New York. The parties hereto hereby waive any right that they may have to a trial by jury…"

38. Pursuant to Paragraph 15, the Employee Agreement "shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law provisions."

## COUNT I

### Declaratory Relief Pursuant to the Federal Declaratory Judgment Act, 28. U.S.C.S. § 2201

39. Dewitt repeats and realleges the allegations of Paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40. Based on Defendant's comments of May 6, 2013, there is an actual controversy concerning whether the confidentiality, company property and non-solicitation provisions contained in Paragraph 5 of the Employment Agreement are enforceable as a matter of law, and whether Defendant must abide by those provisions moving forward.

41. Declaratory judgment would serve a useful purpose in clarifying or settling the legal issues involved in this case.

42. Declaratory judgment would finalize the controversy and offer relief from uncertainty in this case.

43. Wherefore, Dewitt demands relief in the form of a declaratory judgment finding the confidentiality, company property and non-solicitation provisions contained in Paragraph 5 of the Employment Agreement enforceable as a matter of law, with or without appropriate modification by the Court.

## COUNT II

### Breach of Contract

44. Dewitt repeats and realleges the allegations of Paragraphs 1 through 43 of the Complaint as though fully set forth herein.

45. Defendant has breached the Employment Agreement by (a) using Dewitt time and resources to begin competing with Dewitt while employed by Dewitt; (b) using and/or disclosing confidential information and/or trade secrets obtained in the course of his employment with Dewitt in a manner contrary to Dewitt's best interests; and (c) attempting to divert at least one potential client away from Dewitt to a competitor while still employed by Dewitt.

46. As a result of Defendant's breaches, Dewitt has been damaged and continues to be damaged in an amount to be determined at trial, but in no event less than $75,000.

47. Wherefore, Dewitt demands judgment against Defendant, together with compensatory damages.

## COUNT III

### Temporary, Preliminary and Permanent Injunctive Relief

48. Dewitt repeats and realleges the allegations of Paragraphs 1 through 47 of the Complaint as though fully set forth herein.

49. Through the provisions contained in Paragraph 5 of the Employment Agreement, Dewitt sought in good faith to protect its legitimate business interests, consistent with reasonable standards of fair dealing, and absent any overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct.

50. If Defendant is not enjoined from further violating his Employment Agreement and/or his common law obligations to the Company, Dewitt will continue to suffer damages in no event less than $75,000 and be irreparably injured.

51. Wherefore, Dewitt demands Defendant be enjoined from:

a. disclosing, misusing and/or otherwise misappropriating Dewitt's confidential information and/or trade secrets in violation of common law and Paragraph 5(a) of the Employment Agreement;

b. violating Paragraph 5(b) of the Employment Agreement requiring Defendant to return any and all Company property (including but not limited to hard copies of documents, e-mails, electronic data and attachments) he may have in his possession;

c. violating Paragraph 5(c) of the Employment Agreement which prohibits Defendant, for the two (2) year period immediately following termination of employment (to be extended by a period of time equal to the period of time Defendant already spent in violation of Paragraph 5(c)), from using Dewitt's confidential information and/or trade secrets to solicit, accept, divert, or take away, in whole or in part, directly or indirectly, any clients or prospect of Dewitt who were solicited or serviced by Defendant or by anyone directly or indirectly under Defendant's supervision, or with whom Defendant had any business relationship, within the two (2) year period immediately prior to Defendant's termination of employment; and

d. violating Paragraph 5(d) of the Employment Agreement prohibiting Defendant, for the two (2) year period immediately following termination of employment, from directly or indirectly (i) making known to any person, business entity, firm or corporation the names or contact details of any current employees of Dewitt, or any other information pertaining to them, or (ii) attempting to recruit or solicit, or aid in the recruitment or solicitation of any employees of Dewitt.

52.     Wherefore, alternatively, should any of the aforementioned restrictions be found by the Court to be unenforceable, Dewitt would respectfully request the restrictions be modified to the extent necessary to be found enforceable.

### COUNT IV

### Misappropriation of Confidential Information and/or Trade Secrets

53.     Dewitt repeats and realleges the allegations of Paragraphs 1 through 52 of the Complaint as though fully set forth herein.

54.     Mr. Eisenberg is using and/or disclosing Dewitt's confidential information and/or trade secrets for his own benefit and the benefit of his potential new employer.

55.     Mr. Eisenberg's conduct constitutes misappropriation of Dewitt's confidential information and/or trade secrets.

56.     As a result of Mr. Eisenberg's misappropriation of Dewitt's confidential information and/or trade secrets, Dewitt has and will continue to suffer damages in an amount to be determined at trial, but in no event less than $75,000, as well as irreparable harm.

57.     Wherefore, in light of Mr. Eisenberg's willful and malicious conduct, Dewitt demands judgment against Defendant, together with compensatory and punitive damages.

### COUNT V

### Breach of Fiduciary Duty

58.     Dewitt repeats and realleges the allegations of Paragraphs 1 through 57 of the Complaint as though fully set forth herein.

59.     As an employee of Dewitt, Mr. Eisenberg owed Dewitt a fiduciary duty, and was bound to exercise the utmost good faith and loyalty in the performance of his duties.

60. Defendant breached his fiduciary duty to Dewitt by: (a) using Dewitt time and resources to begin competing with Dewitt while employed by Dewitt; (b) using and/or disclosing confidential information and/or trade secrets obtained in the course of his employment with Dewitt in a manner contrary to Dewitt's best interests; and (c) attempting to divert at least one potential client and the commissions that would be earned from placement of insurance on behalf of same away from Dewitt to a competitor while still employed by Dewitt.

61. Defendant was well aware of his duties concerning the protection of confidential and proprietary information and his duty not to compete during the term of his employment with Dewitt. Defendant's breach of his fiduciary duty was therefore intentional, willful and malicious.

62. As a result of Defendant's breach, Dewitt has been damaged and continues to be damaged in an amount to be determined at trial, but in no event less than $75,000.

63. Wherefore, Plaintiff demands judgment against Defendant, together with compensatory damages.

## COUNT VI

### Breach of Duty of Loyalty

64. Dewitt repeats and realleges the allegations of Paragraphs 1 through 63 of the Complaint as though fully set forth herein.

65. As an employee of Dewitt, Mr. Eisenberg owed Dewitt a common law duty of loyalty.

66. Defendant breached his duty of loyalty to Dewitt by: (a) using Dewitt time and resources to begin competing with Dewitt while employed by Dewitt; (b) using and/or disclosing confidential information and/or trade secrets obtained in the course of his employment with

Dewitt in a manner contrary to Dewitt's best interests; and (c) attempting to divert at least one potential client and the commissions that would be earned from placement of insurance on behalf of same away from Dewitt to a competitor while still employed by Dewitt.

67. Defendant was well aware of the duty of loyalty he owed to Dewitt during the term of his employment with Dewitt. Defendant's breach of his duty of loyalty to Dewitt was therefore intentional, willful and malicious.

68. As a result of Defendant's breach, Dewitt has been damaged and continues to be damaged in an amount to be determined at trial, but in no event less than $75,000.

69. Wherefore, pursuant to New York's long-standing "faithless servant" doctrine, Dewitt demands judgment against Defendant and that Defendant forfeit any and all compensation earned and expenses reimbursed on his behalf in the period during which he was disloyal.

WHEREFORE, Dewitt demands judgment against Defendant as follows:

A. Awarding a declaratory judgment finding the confidentiality, company property and non-solicitation provisions contained in Paragraph 5 of the Employment Agreement enforceable as a matter of law, with or without any necessary modification of the Employment Agreement by the Court.

B. Awarding compensatory damages against Mr. Eisenberg for his breach of the Employment Agreement.

C. Imposing temporary, preliminary and permanent injunctions enjoining Mr. Eisenberg from further breaching his common law obligations to Dewitt and/or

the terms of his Employment Agreement, with or without any necessary modification of said Employment Agreement by the Court.

D. Awarding compensatory and punitive damages against Mr. Eisenberg for his misappropriation of Dewitt's confidential information and/or trade secrets.

E. Awarding compensatory damages for Defendant's breach of his fiduciary duty to Dewitt and for his breach of the duty of loyalty to Dewitt (including, but not limited to compensation earned and expenses reimbursed on his behalf during the period of disloyalty).

F. Awarding Dewitt's attorneys' fees, costs and disbursements of this action; and

G. Awarding Dewitt such other and further relief as the Court deems just and proper.

**GOLDBERG SEGALLA LLP**
Attorneys for Plaintiff
Dewitt Stern Group, Inc.

By: _____
Peter J. Biging, Esquire (PB-9913)
A Member of the Firm
780 Third Avenue
Suite 3100
New York, New York 10017
Phone: 646-292-8711
E-Mail: pbiging@goldbergsegalla.com

Dated: May 6, 2013