UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


----------------------------------X


DEWITT STERN GROUP, INC.,

                    Plaintiff,

                                              13 Civ. 3060 (RWS)

     - against -

                                                     OPINION

RICHARD EISENBERG,

                    Defendant.


----------------------------------X


A P P E A R A N C E S:


          Attorney for Plaintiff DeWitt

          GOLDBERG SEGALLA LLP
          780 Third Avenue, Suite 3100
          New York, NY  10017
          By:  Peter J. Biging, Esq.


          Attorney for Defendant Eisenberg

          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
          1745 Broadway, 22nd Floor
          New York, NY  10019
          By:  Aaron Warshaw

**Sweet, D.J.**

Plaintiff DeWitt Stern Group Inc. ("DeWitt" or "Plaintiff") moves for permission to amend its First Amended Complaint ("FAC") to add a claim of unjust enrichment against Defendant Eisenberg ("Eisenberg" or "Defendant") and Arthur J. Gallagher & Co. ("Gallagher") (collectively, the "Defendants").

For the reasons set forth below, Plaintiff's motion is granted with respect to Eisenberg and denied as to Gallagher.

## Procedural History & Facts

The procedural history and facts underlying this action were previously set forth in opinions by this Court dated October 29, 2013. (*See* Docket No. 39.) Knowledge of the general background of this case is assumed.  Certain facts are repeated in part as relevant to the instant motions.

DeWitt is a privately held insurance brokerage and risk management firm, specializing (in part) in insurance for the entertainment industry, with its primary place of business operations and senior management located in New York.

1

Eisenberg is an established insurance broker. (Affidavit of Richard Eisenberg ("Eisenberg Aff."); ¶ 2-8.) From 2007 until May 6, 2013, Eisenberg was employed by DeWitt as a Senior Vice President and producer, with his primary responsibility to sell film insurance products and oversee the handling of client accounts. Eisenberg is currently employed by Gallagher.

Prior to Eisenberg's employment at DeWitt, he worked at Aon/Albert G. Reuben Insurance Services, Inc. ("Aon/AGRIS") from 2001 until 2007. (Eisenberg Aff. ¶¶ 3, 10.) When he joined Aon/AGRIS, he was purportedly compensated for the sale of his business, client accounts and goodwill in the amount of $400,000. (Declaration of Charles Johnson, ("Johnson Decl."); ¶ 5.) Eisenberg was also subject to a covenant not to compete with regard to the business accounts he had sold to Aon/AGRIS. (Eisenberg Aff. ¶ 10.)

In 2007, Eisenberg left Aon/AGRIS and joined DeWitt. In light of Eisenberg's non-competes, DeWitt detailed in his contract that his employment would include "the purchase of [his] present and future book of business related to the

2

insurance business," (see Eisenberg-DeWitt October 9, 2007
Agreement ("DeWitt Initial Contract")), and provided that DeWitt
would assume the obligation to indemnify and defend Eisenberg
against any claims that might be asserted by Aon/AGRIS resulting
from Eisenberg's "servicing or accepting new insurance
applications for, and/or placing insurance on behalf of any
clients."  (DeWitt Initial Contract at 3.)

Shortly after Eisenberg left Aon/AGRIS for DeWitt,
Aon/AGRIS filed a Cross-Complaint against DeWitt and Eisenberg
alleging, among other things, that Eisenberg had breached the
restrictive covenant provisions in his agreement, and that
DeWitt had raided and tortiously interfered with its business by
convincing customers to abandon their relationships with
Aon/AGRIS and move instead to DeWitt.  (Docket No. #37.)

DeWitt alleges that in order to free Eisenberg from
the restraints imposed by his contract with Aon/AGRIS, and to
permit Eisenberg to lawfully solicit his former clients for
DeWitt, DeWitt entered into a settlement with Aon/AGRIS in which
DeWitt paid Aon/AGRIS $425,000.  (Johnson Decl. ¶ 6.)  According
to DeWitt, as a result of this settlement, which Eisenberg
signed, Eisenberg was permitted to solicit the business he had

3

sold to Aon/AGRIS for DeWitt and continue cultivating these relationships on behalf of DeWitt. (*Id.* at ¶¶ 7-8.)

After Eisenberg joined DeWitt, Plaintiff alleges that Eisenberg, in his capacity as Senior Vice President and producer, had access to DeWitt's confidential information and trade secrets, including names and lists of accounts and clients, names of key account contacts, account characteristics, pricing information, and application information.  Further, DeWitt asserts that in the course of his work for DeWitt, Eisenberg was provided substantial support in his efforts to make former Aon/AGRIS clients DeWitt clients, thereby building his book of business, including: (1) substantial compensation on commissions earned on the business; (2) two full-time employees to assist him in servicing any business he could bring in; (3) offices he could work out of on both coasts; and (4) an apartment in California, half of which was paid for by DeWitt so he could develop clients on the west coast.  (*Id.* at ¶ 8.)

To protect DeWitt's investment in Eisenberg, DeWitt alleges that Eisenberg signed a series of employment agreements with DeWitt, culminating in his final agreement, executed on or about October 9, 2012 (the "Employment Agreement"), the terms of

4

which provided that he could not utilize "confidential

Information" for at least two years after the termination of his

employment with DeWitt for any reason, and defined "Confidential

Information" to include "all information relating to . . . names

and lists of accounts, . . ., customers, clients, . . . [and]

names of key account contacts." (Declaration of Peter S.

Biging, ("Biging Decl.")); (Employment Agreement at ¶ 5a.)


On June 4, 2013, Plaintiff's motion for a preliminary

injunction enforcing this agreement was granted, to the extent

it prohibited Defendant from future violations of the Employment

Agreement (the "June 4 Order"). The preliminary injunction was

explicitly modeled on the terms of this agreement.


Plaintiff filed the First Amended Complaint (the

"FAC") on June 18, 2013, and subsequently filed an order to show

cause for sanctions on July 17, 2013.


On October 29, 2014, DeWitt's motion for sanctions was

denied. The Opinion reiterated that although Eisenberg was

prohibited from soliciting clients with which he had developed

"personal relationships" based upon the financial support of his

employer, including a salary, support staff, and expenses,

5

*Marsh USA Inc. v. Karasaki*, 2008 U.S. Dist. LEXIS 90986, \*51-52
(S.D.N.Y. Oct. 30, 2008), because Plaintiff failed to show that
Defendant had solicited any clients that Defendant did not have
a pre-existing relationship with prior to DeWitt's assistance,
sanctions were denied.  The Opinion noted that while discovery
might yield further evidence on DeWitt's allegations that it
purchased Eisenberg's "book of business," the Employment
Agreement itself did not make any reference to DeWitt owning
Eisenberg's "book of business" or his pre-existing clients.
Accordingly, until information regarding the book of business
was produced, Eisenberg would be restricted solely by the terms
of the Employment Agreement, which does not prevent solicitation
through non-confidential information or trade secrets of clients
with whom he had a pre-existing relationship.  (October 29
Opinion at 11-13.)

On January 15, 2014, Plaintiff moved for leave to
amend the FAC to add a claim of unjust enrichment.  This motion
was heard and marked fully submitted on April 2, 2014.

**Applicable Standard of Law**

6

The standard governing motions to amend is a
"permissive" one that is informed by a "strong preference for
resolving disputes on the merits." *See Williams v. Citigroup
Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011) (citing *New York v.
Green,* 420 F.3d 99, 104 (2d Cir. 2005)); *see also Pangburn v.
Culbertson,* 200 F.3d 65, 70 (2d Cir.1999) (referring to the
"relaxed standard" for motions to amend). Rule 15(a) provides
that leave to amend shall be "freely give[n] . . . when justice
so requires." Fed. R. Civ. P. 15(a)(2). The "circumstances and
terms upon which such leave is to be 'freely given' is committed
to the informed, careful judgment and discretion of the Trial
Judge as he superintends the development of a cause toward its
ultimate disposition." *Freeman v. Continental Gin Co.,* 381 F.2d
459, 468 (5th Cir. 1967) (internal citations omitted).

The Supreme Court has stated that absent undue delay,
bad faith, undue prejudice, or futility, the "mandate" under
Fed. R. Civ. P. 15(a)(2) to freely grant leave to amend "is to
be heeded." *Forman v. Davis,* 371 U.S. 178, 182 (1962); *see also
AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A.,* 626 F.3d
699, 725 (2d Cir. 2010) ("The rule in this Circuit has been to
allow a party to amend its pleadings in the absence of a showing
by the nonmovant of prejudice or bad faith.") (quoting *Block v.
First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993)). If, on

7

the other hand, the proposed amendment "fails to state a claim
or would be subject to a successful motion to dismiss," or would
cause undue delay, bad faith, or undue prejudice, a motion to
amend may be denied. *Kirk v. Heppt,* 423 F.Supp.2d 147, 149
(S.D.N.Y. 2006); *see also Lucente v. Int'l Bus. Machines Corp.,*
310 F.3d 243, 258 (2d Cir. 2002) (leave to amend should be
denied where an amendment to a pleading is futile, namely that
"the proposed claim could not withstand a motion to dismiss").
Thus, the standard for leave to amend, while permissive, is by
no means "automatic," *Klos v. Haskel,* 835 F.Supp. 710, 715
(W.D.N.Y. 1993), or a "mechanical absolute." *Freeman v.
Continental Gin Co.,* 381 F.2d 459, 468 (5th Cir. 1967).

**DeWitt's Motion for Leave to Amend the FAC to Plead Unjust
Enrichment in the Alternative to its Contract Claims is Granted
in Part and Denied in Part**

DeWitt contends that it should be allowed to amend the
FAC to include a claim for unjust enrichment.

Neither party contests the timeliness of the
amendment, or any potential prejudice to Defendants or bad faith
on the part of Plaintiff.  As such, leave to amend turns on the
potential futility of Plaintiff's added claim.

8

A. *Leave to Amend is Granted as to Eisenberg*

There is no dispute that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clerk-Fitzgerald v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987).

The remaining issue is thus whether any portion of DeWitt's contract with Eisenberg is by its terms unenforceable as written, and therefore allows Plaintiff the right to plead a claim for equitable relief in the alternative should certain provisions of the contract be found invalid. *See, e.g.*, *Dragushansky v. Nassar*, 2013 U.S. Dist. LEXIS 12407, *21-24 (S.D.N.Y. Aug. 29, 2013) ("Although a plaintiff cannot ultimately recover under a claim for breach of contract and unjust enrichment where a contract governs the subject matter at issue, a plaintiff can plead both causes of action in the alternative" should the contract be found enforceable).

9

The contested provisions at issue relate to whether
DeWitt has the right to legally prevent Eisenberg from
soliciting clients with whom he had a preexisting relationship
prior to joining DeWitt through DeWitt's purchase of Eisenberg's
"book of business."   (Plaintiff's Memorandum in Support of Leave
to Amend, "Pl. Mem."; at 8-9.)

Plaintiff contends that the October 2007 DeWitt
Initial Contract with Eisenberg specifically contracted for "the
purchase of [Eisenberg's] present and future book of business
related to the Insurance Business," (*see* DeWitt Initial
Contract), and accordingly that DeWitt is entitled to preclude
Eisenberg from soliciting even those clients with whom he had a
preexisting relationship.  Further, DeWitt contends that whether
it may prevent Eisenberg from soliciting such clients will
depend not only on the initial October 9, 2007 contract, but
also on evidence concerning the Settlement Agreement between
DeWitt and Aon/AGRIS as well as Gallagher's behavior while
Eisenberg was still a DeWitt employee.  As such, Plaintiff
asserts that the issue will turn on both potentially
unenforceable provisions of a contract and evidence independent
of and extraneous to the contract, and pleading unjust
enrichment as an alternative form is relief is thus appropriate.

10

*See Union Bank, N.A. v. CBS Corp.*, 2009 U.S. Dist. ELXIS 48816
(S.D.N.Y. June 9, 2009) ("Because it has already become clear
that at least one of the parties will argue that resolution of
this dispute requires going outside the four corners of the
parties' agreements, the Court cannot determine as a matter of
law and at the inception of this litigation that this dispute
will be resolved through application of the [written agreements
at issue.]  Accordingly, [the defendant's] motion to dismiss the
[unjust enrichment cause of action] is denied. . . .")[1].

       As a general rule, an employee cannot be prevented
from soliciting clients with whom he had pre-existing
relationships, or using information based on casual memory.
*See, e.g., Barbagallo*, No. 11-CV-1358, 2013 WL 132711, at *19
(dismissing breach of restrictive covenant claim because former
employee had "pre-existing relationships" with all the clients
at issue; "sensible clients follow the talent they trust, and
not the organizations to which that talent is temporarily

---

[1] Defendants contend that "It is not plausible that DeWitt would be prevented
from recovering under the Employment Agreement due to well-established public
policy concerns yet, at the same time, still be entitled to recover under
equitable principles."  (Opp. Brief at 11.)  As an initial matter, equitable
relief is meant to be pled in the alternative should contractual provisions
prove unenforceable.  In any event, the unjust enrichment claim turns on
evidence independent of and extraneous to the Employment Agreement, as well
as provisions in the DeWitt Initial Contract, not solely the Employment
Agreement.

11

attached.  Clients are not dragged against their will from one
firm to another, but actively choose who they will retain for
professional services.") (collecting cases); *Nebraskaland, Inc.
v. Brody*, No. 09-CV-9155 (DAB), 2010 WL 157496, at *3 (S.D.N.Y.
Jan. 13, 2010) ("*BDO Seimand* prevents the Court from enforcing
the restrictive covenant" to retrain solicitation of customers
with whom defendant had a "pre-existing relationships"); *Good
Energy, L.P. v. Kosachuk*, 49 A.D. 3d 331, 332 (1st Dep't 2008)
(non-compete clause unenforceable because it prohibited former
employee from working with clients who followed him due to his
"pre-existing relationship" with them).


        In *BDO Seidman v. Hirshberg,* 93 N.Y.2d 382, 690
N.Y.S.2d 854, 712 N.E.2d 1220 (N.Y.1999), for instance, the New
York Court of Appeals found that an employer has a legitimate
interest in protecting against an employee's "competitive use of
[a] client relationship which [the employer] enabled him to
acquire through his performance of . . . services for the firm's
clientele during the course of his employment." *Id.,* 392, 690
N.Y.S.2d 854, 712 N.E.2d 1220. However, in contrast to an
employer's legitimate interest in client relationships it was
instrumental in creating and fostering, the Court found that
"[e]xtending [an] anti-competitive covenant to [the employer's]

12

clients with whom relationships with defendant did not develop

through assignments to perform direct, substantive . . .

services . . . would constitute a restraint 'greater than is

needed to protect' these legitimate interests." *Id.* (citing

Restatement [Second] of Contacts § 188[1][a]).


Neither party cites any precedent allowing a provision

of a contract to preclude an employee from soliciting even those

clients with whom the employee had a preexisting relationship.

In fact, Plaintiff's cited precedent refers solely to cases in

which either such a provision was ultimately found invalid, or

where the provision related only to precluding an employee from

soliciting clients that were serviced or solicited first during

his employment. *See, e.g.*, *Spinal Dimensions, Inc. v. Chepenuk*,

No. 4805-07, 2007 WL 2296503, at *6 (N.Y. Sup. Ct. Aug. 9, 2007)

(the non-compete provision was unenforceable because "the

agreement [wa]s not limited to the devices sold by defendant

Chepenuk nor the customers with whom he had ongoing

relationships."); *Johnson Controls, Inc. v. A.P.T. Critical*

*Sys., Inc.,* 323 F.Supp.2d 525, 532 (S.D.N.Y.2004) (recognizing

the enforceability of a non-servicing provision which restrained

the defendant from performing services directly or indirectly

for the plaintiff's existing customers who had been served or

13

solicited by the defendant or by someone supervised by the
defendant during the defendant's employment); *Portware, LLC v.
Barot,* No. 603738-05, 2006 WL 516816, at *5 (N.Y. Sup. Ct. Mar.
2, 2006) (finding employment agreement that barred defendant
from "soliciting, communicating, or transacting business with
customers or potential customers with whom he first developed a
relationship" through his employment with plaintiff to be valid
and enforceable).

Accordingly, there remain issues of material fact as
to the existence of a remedy at law for certain of Eisenberg's
actions, namely DeWitt's ability, if it establishes that it
purchased Eisenberg's "book of business," to prohibit Eisenberg
from soliciting clients with whom Eisenberg had relationships
prior to joining DeWitt. In other words, if the contractual
language in the October 2007 DeWitt Initial Contract is
unenforceable, or if discovery yields evidence that DeWitt
purchased Eisenberg's book of business extraneously to and
independently of the Employment Agreement, it is possible that
Eisenberg benefited from the use of Eisenberg's client list, and
that equity and good conscience might require restitution.[2] *See*

---

[2] Defendants cited precedent in support of futility are distinguishable in that
the enforceability and scope of the contracts in those cases were not in
dispute. (*See* Plaintiff's Reply Memorandum, "Pl. Reply Mem."; at 5.); *see*

*Poller v. BioScrip, Inc.*, 2013 WL 5354753, at * (S.D.N.Y. Sept. 25, 2013) (finding regardless of whether the information was protected by the contractual provision, however, it was possible that defendant and his current employed "benefited, at the [former employer's] expense, from the use of the information, and that equity and good conscience might require restitution. Accordingly, [the] unjust enrichment claim" was allowed to stand in the alternative to the contractual claims). Thus, DeWitt's unjust enrichment claim may stand in the alternative to its contractual claims. *See, e.g., Usov v. Lazar*, 2013 U.S. Dist. LEXIS 89257 (S.D.N.Y. June 18, 2013) ("[W]hile a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories."); *Dragushansky v. Nasser*, 2013 U.S. Dist. LEXIS 124074, *22

---

*also Union Bank, N.A., v. CBS Corp.*, 2009 U.S. Dist. LEXIS 48816, *21 (S.D.N.Y. June 9, 2009) (noting that "[d]ecisions interpreting *Clark-Fitzpatrick* have made clear that the predicate for dismissing quasi-contract claims is that the contract at issue 'clearly covers the dispute between the parties.'"). The fact that DeWitt relies on similar facts to establish the unjust enrichment claim is equally inapplicable. *See Usov v. Lazar*, 2013 U.S. Dist. LEXIS 89257 (S.D.N.Y. June 18, 2013) ("[W]hile a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories."); *see also Dragushansky v. Nasser*, 2013 U.S. Dist. LEXIS 124074, *22 (S.D.N.Y. Aug. 29, 2013) ("Although a plaintiff cannot ultimately recover under a claim for breach of contract and unjust enrichment where a contract governs the subject matter at issue, a plaintiff can plead both causes of action in the alternative") (citation omitted).

(S.D.N.Y. Aug. 29, 2013) ("Although a plaintiff cannot ultimately recover under a claim for breach of contract and unjust enrichment where a contract governs the subject matter at issue, a plaintiff can plead both causes of action in the alternative") (citation omitted).

   *B. Leave to Amend is Denied as to Gallgher*

        With respect to Gallagher, precedent establishes that "an unjust enrichment claim is [] unavailable when an employer benefits from misappropriated material gleaned from the former employee of a competitor, even when the defendant-employer knows or induces such misappropriation." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448 (E.D.N.Y. 2011); *see also Wayne Thomas Salon, Inc. v. Moser,* No. 603632/092010, 2010 N.Y. Misc. LEXIS 5015, *12 (N.Y. Sup. Ct. Oct. 12, 2010) (dismissing unjust enrichment claim; although the complaint alleged that former employee enriched defendant, his new employer, "by accepting client's personal contact information, viewing client information on the . . .  computer, stealing confidential client information, informing clients of her resignation, and by soliciting [plaintiff's] clients," there was no "allegation that the plaintiff itself conferred any benefit upon the . . .

16

defendants); *Zeno Group, Inc. v. Charlotte Wray,* No. 602632/06, 2008 N.Y. Misc. LEXIS 10229, *30 (N.Y. Sup. Ct. Sept. 26, 2008) ("The complaint states that defendants have been unjustly enriched in receiving the benefits of employment and client relationships, 'including that of a special and extraordinary employee who had access to the highly confidential and proprietary information of [plaintiff]. . . . [T]his argument is ineffective. Defendants presumably paid [employee] for her services, and did work in exchange for payment from clients. Nothing was 'bestowed' upon them."). If, ultimately, discovery yields evidence that Gallagher employed Eisenberg to actively solicit clients while Eisenberg was still an employee of Dewitt, Plaintiff may re-allege unjust enrichment against Gallagher at that time. *See* IDG USA, LLC v. Schupp, 2012 WL 5217223, *12 (W.D.N.Y. Oct. 22, 2012).

Because Plaintiff fails to sufficiently allege actions by Gallagher establishing a sufficient connection to DeWitt at this time, Plaintiff's motion to amend is dismissed as to Gallagher.

**CONCLUSION**

17

For the reasons set forth above, Plaintiff's motion for leave to amend is granted with respect to Eisenberg and denied with respect to Gallagher without prejudice.


It is so ordered.



New York, NY
April 9 , 2014

_____
ROBERT W. SWEET
U.S.D.J.

18